and United States v. Laureano. Case numbers are 24-1573 and 24-1586. And let's see, we're going to start with Mr. Yonella, I believe, for Mr. Ben-Yohanan and Mr. Bachrach then for Mr. Laureano. All right. Make sure I've got everybody designated for the right people they're speaking for. And sir, I think you have seven minutes and you reserved two minutes for rebuttal? Yes, Your Honor. All right. We'll hear from you when you're ready. The 120-month sentence opposed upon my client by Judge Lyman was substantively unreasonable and it should be vacated even under the deferential abuse of discretion standard. It's shockingly high. Now, the guidelines sentence in this case was 84 months. So let's talk about the guidelines in this case. The guidelines recommendation is just a number, right? It's 924C. Yes. And so it's unusual. There's no range and it doesn't take into account aggravating or mitigating factors, right? It doesn't take leader or organizer. It doesn't take into account various harms, right? It doesn't take into account criminal history category. Right. It's just a number, just a flat seven-year man-min. So it's an 84-month guideline. Yes, Your Honor. How should we, if we should, should we think about that differently? Because I'll tell you the truth. I said, oh, I got a substantive reasonableness challenge where they actually, these two sentences are substantially more than the guidelines recommendation. That's very interesting. But when you drill down, should we think about that delta differently when we're dealing with such an unusual guideline? Yes. And I think one of the things you might consider under 3553A or when analyzing the guideline and how much reliance you want to put on it, you might want to consider some of the other factors that might apply, such as criminal history category. My client was in criminal history category 1. So many defendants who commit a 924C brandishing offense might have a category 3 or a 5. He was criminal history category 1. And I agree that that inures to his benefit. What about his conduct immediately after the shooting? Is that something the court can consider? Lying to the police about whether the car was in his possession? This went on, presumably, uncharged or, according to the government, unresolved for many years. Is that something the court can consider, the trial judge can consider, the fact that he lied about his involvement, that he was the driver of a getaway car in basically what amounts to be an execution-style murder? Well, absolutely the court may consider my client's lie to law enforcement. And there was an 8-year delay in prosecution. So he got 120 months, and this is a, and the guidelines were 84 to life, correct? No, the guidelines were 84. 84. But the court could sentence up to life, correct? The statutory maximum was life. Okay. So I guess I'm struggling under the totality of the circumstances, how 120 months, when the statutory minimum was 84, right? Was that? Yes. Okay. And the maximum was life, how that was substantively unreasonable beyond he was a criminal history 1? Well, that I think you need to dig down into the facts of the individual and of the crime. So I've already mentioned that he's in criminal history category 1. He had one criminal history point. He was 21 years old at the time of the offense. He used his mother's car with his mother's license plate. So obviously, an individual at the age of 21 doesn't have the maturity, they don't have the forethought, they don't have the impulse control to control their actions as much as an adult does. What about his conduct in the interim, the 8 years? Well, for the most part... Can the court consider that? After the lie to the police, it was very good. And of course, that can be considered as a 3553A factor. He had an auto detailing business. He was buying and selling used cars. He didn't have any criminal history. He had an attempted criminal possession of a weapon at age 18. And then this offense occurred when he was 21. I would like to mention the fact that he's 5 years younger than the co-defendant. He's convicted here and he pleaded guilty to aiding and abetting the brandishing of a firearm. So I know the court can consider the actual facts of what occurred, but that's all he was convicted of. The co-defendant had a reputation as a drug dealer. He sold drugs in the building where my client lived, but he didn't have a reputation for violence. But I think it's undisputed. My read of the record was, and tell me if I'm wrong, that it was undisputed by your client that he knew there was a gun and undisputed by the murder, Mr. Perez. Is that? Precisely. And also the government did not contend that he knew the gun would be even discharged. Well, he didn't plead to discharge, right? But not only did they not say he had advanced knowledge of a murder, he didn't have advanced knowledge that a gun would be discharged. He was a 21-year-old being asked by a 26-year-old who lived in his building to drive a car on a particular night. So assuming for the sake of argument that any one of the three of us, if we were sitting as sentencing judge, would have given him the man-man, the seven years, given the standard of review here, remembering that it's not, the difference is not between 24 to 30 months and 10 years. It's the difference is between seven-year man-man and 10-year actual sentence. How do we deal with the very generous deferential abuse of discretion standard here? There's no mathematical formula, but one thing I would ask for your honor to consider, that the guideline sentence was exactly seven years. Half of that would be three and a half years. The judge went almost half of the sentence above. In departing above, he went to... He didn't depart, he varied, right? I'm sorry, he varied. He did not depart. He went 140 to 150 percent above, your honor. All right. Thank you, counsel. You've reserved some time for rebuttal, so we'll see you again. We'll hear from Mr. Laureano's counsel now. You also have reserved two minutes for rebuttal, so you have five minutes now. Thank you, your honors. Good morning, your honors. Michael Bachrach for defendant Carlos Laureano. For Mr. Laureano, much like his code of co-appellant, this appeal is very straightforward and simple. But for Mr. Laureano, it's even more so. A sentence of 15... He received, in this case, a sentence of 15 years above his guidelines, 15 years above the appellate waiver, and 15 years above the recommendation from the probation department. In this case, that is so shockingly high that it's substantially unreasonable. What if he had... So first, as a matter of record, I think, these folks were both charged with a death-eligible crime at the outset, is that right? They are, yes, your honor. Okay. So if he had... So he pled to... We're going to focus just on count one, right, which is the one related to the murder, setting aside that five-year extra. The conduct to which he stipulated, and which is not objected to in the PSR, looked to me like it could have been sufficient to sustain a conviction for a murder, at least in the second degree. Your honor, I think it would be fair to say that had it gone to trial, the government would have had sufficient evidence to establish a 924J conviction, had they wanted it, if not an 848E conviction, again, had they sought it. But I think it's important to take note that the evidence wasn't perfect, there were flaws in it, and that is why the government chose, and it's of course the government who has all the power as to what to offer in a plea agreement, the government chose not to have him plead to the superseding indictment, which charged 924J and 848E, but instead to a superseding information that allowed him to plead guilty solely to a 924C count with a substantially lower guideline range. Well, and a substantially lower mandatory, like he had a mandatory minimum, there was no mandatory life on the table anymore at this point, right? There was no mandatory life. And there's no death penalty on the table. Well, first of all, the death penalty was taken off the case prior to the plea, that was an earlier decision by the attorney general. Yes, but those are being revisited, so who knows, but. Well, so far, every court that has ruled on it has said that they can't revisit it. There are seven decisions right now across the country that have said that consistently. With respect to the mandatory minimum, there's a misstatement there. 924J has a mandatory minimum of five years. 848E does not have a mandatory minimum. Okay. Well, counsel, what I'm asking about is sometimes when we see a case and we think this guidelines range is not quite what it should be, and you have cases like Dorby that say this guidelines range is unusual and it's way too high. Here, the conduct, if it were evaluated on its own, would have supported a guidelines range squarely at where he was sentenced. His guidelines would have been 360 to life had he pled guilty or been convicted of the counts of the superseding indictment. That's absolutely true, Your Honor. But again, the government chose to have him sentenced not on those counts, but instead under guidelines of simply a straight 15 years, 180 months. That's the government's choice. The government's control over what to plea, and because of it, they have to live with that bargain. Right, but the plea agreement didn't restrict there. It wasn't 11C1C. It didn't restrict their ability to seek a higher sentence, right? It didn't, but it changed the starting point, Your Honor. And under Supreme Court and Second Circuit case law, the starting point is the guidelines, and it remains the guidelines even in a case such as this. So the government chose to go to sentencing, first a plea and then sentencing, with an intentionally lower guideline starting point than they would otherwise. And this Court has held that, excuse me, the Supreme Court has held that it's uncontroversial that a major departure should be supported by more significant justification than a minor one. And this, and as well, that the Court must consider the extent of the deviation and ensure that justification is sufficiently compelling to support the degree of the variance. So we start, regardless of what it would have been at trial, regardless of what it would have been at the unconvicted charges, on the count of conviction, your starting point is 180 months. So let me ask the same question I asked your colleague, which is, should we, and if so, how should we view a 924C, this weird guidelines range that's not a range? Your Honor, I think you actually have to view it the way you would any other guidelines. Congress put, and I disagree with my co-appellant on this one, Congress chose what the guidelines, not Congress, excuse me, the Sentencing Commission chose what the guidelines would be for the various different offenses. And this was one of them. And the variable that has happened here was a possibility when it outlined that for a 924C discharge, it would still be a 10-year mandatory minimum for that offense. Congress knew it. So, yes, this may be a case where the underlying facts are a little unique, but not so unique to warrant a 100 percent increase in the sentence, which is what occurred here. In a case where the dis- You're calling it a 100 percent increase in the sentence. At plea, your client understood, and that was part of the plea agreement, that the government would seek a higher sentence than the 180. Yes. And that the court could give up to life, correct? Your Honor- And is the court precluded from considering the underlying facts in this case, which involve, and your client agreed to these facts, walking behind the victim, shooting him point blank in the head, and then shooting at his pregnant girlfriend. He pled to those facts, right? So, I'm struggling with- Under our standard of- He pled to shooting the victim? Yes. Okay. But there was evidence that the pregnant girlfriend was shot at. She- He was firing at the victim. She was standing there at the same time. But there was evidence that could support he was firing at either of them. He's the only shooter, correct? Correct. Under those set of facts, including his significant criminal history, under our standard of review, how are we to say that giving him 360 months was too much? Because his guideline range, his starting point was 180 months, your Honor. And the sentence that was imposed- But that's a starting point. You just said it. That's the starting point. It's not the end point. So, we're focused on the end point here, right? Yes and no, Judge. Because when you have to start, you still have a starting point. So, when you're evaluating where the end point is, you have to evaluate the deviation. That's what the Supreme Court said in Gall. And you have to have a significant justification for it. So, yes. If we were here and the sentence was 20 years as opposed to 30 years, if it was only a five-year increase as opposed to 15, obviously the argument I think the defendant- the appellant would have would be much more difficult. But here, we're talking about- Certainly, but- We're talking about a full, complete, 100% increase. Sentencing him more than defendants in similar situations with more aggravating facts have received, as I cited to you in my brief. I'm sorry. I see I'm over time. All right. Thank you, counsel. Unless anyone else has questions, we'll see you again on rebuttal. Thank you. We'll hear now from the government. And, counsel, it might be helpful to give us some principles that apply generally here, and then you can respond to- or in either direction, and also respond separately to the two defendants' arguments. Certainly, Your Honor. Thank you. May it please the court, Jacob Fiddleman for the United States. I represent the government on this appeal, although I was not involved in the district court proceedings below. Neither defendant's sentence was more than 20 years as opposed to 30 years. is substantively unreasonable. This court's review here is to provide a backstop to reverse only those sentences that are shockingly high and cannot be supported as a matter of law. That simply is not the case for either defendant's sentence. I was shocked to see it double the guidelines. I mean, you know, when I do my initial quick look, I thought, you know, as I sort of mentioned to your colleagues here, wow, I never see these substantive reasonableness challenges to such an extreme difference. Why is that not shocking in and of itself? Because the question is whether the sentence imposed is shocking in light of the entire 3553A factor mix. And so in this case, I'll address Mr. Luriano, but the point, as Your Honor mentioned at the start, applies to both, which is there's something unusual with respect to 924C-only dispositions. Now, the government thinks that the 3553A analysis with respect to the guidelines is the same for 924C-only cases. Namely, the guidelines are a starting point, and then the court can and must consider any way in which the individual facts and circumstances warrant a sentence of, you know, above or below or different from the guidelines' starting point, as Judge Kahn called it. So in this case, the guidelines were either seven years or 15 years, but that's the starting point. As Your Honor mentioned at the very beginning of the argument, Judge Merriam, the guidelines' recommendation in neither case captured the defendant's criminal history, the actual conduct they engaged in, or any of the mitigators or aggravators that the guidelines otherwise capture. And so Judge Lyman was well within his discretion in noting that. In pointing out that there are serious aggravating circumstances here with respect to the actual conduct, there are serious aggravating circumstances with respect to criminal history. As to Mr. Loriano? As—frankly, as to both, Your Honor. Certainly, Mr. Loriano had a very serious criminal history. He was in Category 6. He had serious drug felonies before and after the murder. But Mr. Ben-Yochanan had a prior firearm conviction from several years earlier as to which he was still on probation at the time of this murder. And that also was reasonable for the district court to consider, even if it only resulted in one criminal history point and left him in criminal history Category 1. It goes directly to the 3553A factors. The conduct here was egregious. It was a premeditated, as to Mr. Loriano, premeditated execution-style first-degree murder by shooting a suspected drug robber in the back of the head while he hugged his pregnant girlfriend. Simply put, a 30-year sentence for that conduct is not shockingly unreasonable. And that's the test for this court. Well, it's 25 for that conduct, right, actually? Because it's a five-year mandatory consecutive on the second count. I think it's fair to say a 30-year sentence for the combination of that conduct and then continued gun possession in connection with his continued drug dealing later does not shock the conscience. Judge Lyman reasonably pointed out, in fact, that a relevant data point, in addition to the actual guideline sentence, was 2A1.1, which is the guideline that typically applies to these facts, premeditated murder. And in that guideline, the applications note says that life imprisonment is typically the appropriate sentence for a premeditated execution. And so Judge Lyman considered that. He didn't impose a life sentence, but he considered it as a relevant data point, along with the statistics, which we cite in our brief on page 25 and 26, with regard to what sentences are imposed in first-degree murder cases. So we submit that Loriano's 30-year sentence simply does not shock the conscience. With respect to Mr. Vagnopanen, the same logic applies. What Judge Lyman essentially found here was something akin to felony murder, right? The parties agreed, and the court found, that Mr. Vagnopanen knew and intended, and aided and abetted, a drug-related brandishing of a firearm at someone suspected of robbing Mr. Loriano, who he knew was a drug dealer. It then turns out, though it may not have been specifically intended, it was well within the reasonably foreseeable possible results that that ended up killing someone, that the gun was discharged, and that the victim died, right? Judge Lyman reasonably said, this is like felony murder. And felony murder, under the guidelines, typically under 2A1.1, the murder guideline is applied, and then the commentary says, you can depart or vary downward, as the case may be, based on the individual defendant's lack of intent to kill. Here, Judge Lyman reasonably considered the entirety of the facts and circumstances. And he concluded that, particularly where the defendant concealed the offense and lied about it right afterward, and the prior firearms conviction that he had, a 10-year sentence over a 7-year guidelines range was reasonable. And that, too, does not shock the conscience based on the totality of the circumstances. One very brief moment, which is, Mr. Loriano mentions emphatically the structure of the plea agreement and the probation recommendation and the appellate waiver. There could be no reasonable expectation from the terms of the plea agreement and the allocution that the court might not have imposed the sentence that it did. It was specifically allowed. The government was allowed to argue for it. That it's allowed is not—I have no doubt that it came as a genuine shock to the people in that courtroom that the sentence was 30 years on an 18-year—on a 15-year amendment. Respectfully, Your Honor, I disagree. It's what the government had asked for in its papers, and the defendant was specifically allocuted at the plea. This document is a contract between you and the government. It does not bind the court. The court is going to consider all the 35, 53 factors and could sentence you anywhere up to life. Every plea agreement says that, right? Yeah. We understand that. But which specifically eliminates sort of idiosyncratic reliance on what you might think your sentence is going to be. The bottom line is he knew that he pled to a premeditated execution. And so the main point I wanted to mention was with respect to the appellate waiver. The fact that the government agrees not to appeal above a certain point cannot bind the district court. The only relevant factor there would be the sentencing guidelines. And the court reasonably considered the guidelines as a starting point here. So unless the court has any further questions— Just help me with—I'm sorry. The only relevant factor to what is the sentencing guidelines? I'm sorry. The only factor relevant to the court's 35, 53A analysis that flows from the structure of the plea agreement is the sentencing guidelines that resulted from the count of conviction. The fact that the government agreed to not appeal in certain circumstances has nothing to do with the 35, 53A factors. So I think this argument is—I'm not sure how it fits into a substantive reasonableness argument. But you do hear this here. And it is an interesting question that I think from Mr. Laureano's perspective and maybe Mr. Ben-Yohanan's perspective, it feels a little—I think one of them calls it a bait and switch. Well, give me a second. It feels like the government says, we're giving you this huge break, right? We're going to dismiss the indictment and we're going to let you plead to this lesser count. And so you should give up your trial rights. And they feel like the—everybody knows that every plea agreement says, of course, you can get up to the statutory maximum. But it just feels not quite right. And I understand that. But I guess my question for you is, does that sense of a bait and switch or a sense of the idea that it misled their clients, whether or not that's fair, does that play into a substantive reasonableness assessment at all? Or are we looking solely at the sentence itself and not at the expectations of the parties? So two things, Your Honor. First, I think we're looking solely at the sentence itself and not the expectations of the parties. But second, we emphatically reject the notion that it feels wrong or seems like a bait and switch or that it would be reasonable for a defendant to feel that way. The terms of these plea agreements were specifically structured so that the mandatory minimum was lowered, which is a major benefit, and the guidelines starting point was lowered, which is a major benefit, equipping the defendants to be able to argue for a sentence below what otherwise would have been benefited by the fact that the starting point was also lowered. But that has nothing to do with sort of high-end risk capping, right? The structure of this plea agreement contained no risk, no cap on the high end from a risk of abatement perspective. And some plea agreements do. Oftentimes, murder defendants will plead to plea agreements that involve a cap on the statutory maximum. They could have pled to a drug charge instead. He could have asked to plead to a drug charge instead. He could have, you know, oftentimes there's a structured arrangement where there's a 30-year cap. And in those circumstances, the guidelines are usually the 30-year cap. And so a defendant starts from the top at 30 and has to argue down. They chose to have the chance to start from the bottom and argue up. But they had no upside cap. And that is exactly what they knew they were agreeing to. Let me ask you one last question just about the—you agreed that 924C is sort of unique in terms of the way the guidelines work. Mr. Ben-Yohanan has no criminal history. He has one criminal history point. He's in criminal history category one. And his guidelines under many things would have been lower. How do we account for that? So I don't think his guidelines would have been lower. If he had pled to the conduct, aiding and abetting, essentially felony murder, right? Any other statute that had anything— Well, but the record here doesn't say that he has agreed that he knew there was going to be a murder. No. No. Felony murder. Okay. So just that he agreed that he knew it was to collect a drug debt? Is that sufficient? He knew that he was helping a drug dealer brandish a firearm at a rival drug dealer in connection with the drug business. Yes. And so it's well within the reasonably foreseeable results that someone will die when that happens. And so absent the 2K2.4 pinning of the man-min as the guidelines range, any other guideline that applied would have reflected his actual conduct, would likely have included a cross reference to premeditated murder as a felony murder. And then there would be an application note that said the judge should depart or vary downward from life to capture the lesser intent and culpability of the defendant. All right. Thank you, counsel. We'll hear from defense counsel again. You have two minutes each, beginning with Mr. Ionella. When you consider whether the parties were shocked or not, David Tauger said at sentencing that he'd been practicing law for 36 years and he hadn't seen an upward departure from a 924C offense. It's a variance, but your colleague for the government points out or argues that we should consider the actual sentence and not the expectations of the parties. How do you respond to that? Well, but you are required to decide whether the sentence actually imposed was shocking. To whom? To us or to the parties? To the court's sense of justice. Considering that the individual involved in the case, the nature of the offense, the specific guideline, the degree of the departure. Well, let's take the nature of the offense and the way he behaved after. So even if your opponent says, and I think there's law supporting that if you enable someone, you drive someone, you're the getaway driver and you know he has a weapon and that it's loaded and he's going to confront someone about a deal gone bad, that it's reasonably foreseeable that somebody is going to get shot. But leave that aside, his conduct after. I'm struggling to find how it's so shocking that the court, he was looking at a seven year mandatory minimum. The court gave him 10 years, three years more. Given the circumstances of this offense and his conduct and lying to the police, assisting in hiding the instrumentalities of the crime, how is that so shocking? I want to apologize because I used the word departure again and this is an upward variance. It's shocking, Your Honor, given his age. When the two older co-defendants jump in the car panting and tell him to drive, drive, drive, and then one of the co-defendants threw the gun out of the car during the drive back. So my client didn't come forward and tell the truth about what occurred. Well, you know, maybe he's scared at the moment. And the court, I think the trial judge talked about this. He could have gone the other way like, oh, this has really gone bad. He could have gone to the government and said, look, I didn't know this was going to happen. Um, you know, I didn't know this guy was going to do this. But I'm scared. I need protection. I mean, there are many things he could have done other than lie to the police for eight years. That's true. But think of the sentence imposed. What Your Honor said is absolutely true. But does that justify a 10-year sentence for a 21-year-old who drives his mother's car under circumstances where the case is almost is certainly going to bounce back on his mother than eventually on him? Does it justify a 10-year sentence? That much of a variance from the guidelines? Three more years? I'm not saying it's, we're not asking for, we couldn't ask for three years or five years or seven years is the guideline sentence. That's a long time for, that's a long time for a 21-year-old. Thank you, counsel. And we'll hear from Mr. Backrack.  Again, Your Honors, the government and the defense actually agree on something. It's nice to see. And in fact, I think the court agrees on it to a certain extent too. What matters here is you only look at the sentence. That's what they're saying. You look at the sentence. That means you don't look at the maximum possible potential sentence, the statutory maximum, which in so many cases, by the way, is life. You look at what are the guidelines and what's the, what is the deviation from the guidelines? So we look to the minimum but not the maximum? No. We don't look? Your Honor, the minimum is what the minimum is, meaning the judge can't go below that. That's what the minimum is. The maximum is he can't go above that. If this was a 924- And the difference is, try to help me understand how the court should only look at the minimum. So those are the outward limits of what the offense is. That's not your starting point. That's the outward limits, no matter what the case was. So if this was truly one of the worst of the worst cases, we would be in a different situation. But the court and the government both acknowledge this is not one of the worst of the worst cases. The court and the government acknowledge that Mr. Luriano was indeed remorseful. The court and the government acknowledge that there was substantial mitigation in this case. These are issues that were not in dispute, Your Honor. If it was a regular 924-C case with just a simple possession and nothing more, the minimum would be five and the maximum would still be life. You don't consider the minimum the maximum, except for the fact that that's the outer boundaries of what's allowed. You still have to start with the starting point, which there would be five years. Here, the starting point is 15 years. But that's the starting point. And what the judge then did was he varied upwards 15 years. Well, let me ask you, though, it's 10 years, right? Because this is, I know this is maybe a detail, but he's got a five-year man-to-man consecutive on count two. So he varied upwards, no, because the guidelines are still for 880 months, because you still have to consider the guidelines. Right, 5 plus 10 is the guidelines. Correct. So it is a 15-year upward variance. Okay, from the 10-year guideline for the murder to the... From the aggregate guidelines of the two offenses combined, which is how you have to calculate it for a 924-C offense. But the total sentence on the count one, the count that relates to the murder, is 25 years, plus five years for the sort of more traditional 924-C. Correct. So under that circumstance, he actually went up 150% on the murder count, not 100%, and then did a tack-on of an additional five years for the other account. So it's actually even more than I've been arguing, Judge, under that logic. I've been arguing the aggravate because I think that's reasonable under these circumstances. But you're right, it's even more shocking in some ways. All right, thank you all. We appreciate the arguments. The matter is submitted. We'll take it under advisement. That's it for our argued cases today. Thanks to all of our court staff, especially our talented court clerk and our court security officer. I'll ask the clerk to adjourn us. Court stands adjourned. Thank you, Your Honor. It was a pleasure. Thank you, Counsel. It was good to see you, Your Honor. Thank you.